**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

BRITTANY STODDARD, individually and on
behalf of all others similarly situated,

        Plaintiff,

   v.

UNDERLINING BEAUTY, LLC d/b/a
NAILBOO,

        Defendant.

Case No. 2:21-cv-14414-DMM

**<u>UNDERLINING BEAUTY, LLC d/b/a NAILBOO'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT AND
MEMORANDUM OF LAW IN SUPPORT</u>**

Underlining Beauty, LLC d/b/a Nailboo ("UB") respectfully moves to dismiss the First Amended Complaint (Dkt. 10, "FAC") filed by Plaintiff Brittany Stoddard, in its entirety and with prejudice, under Fed. R. Civ. P. 12(b)(6).[1]  In support, UB submits the following Memorandum.

## PRELIMINARY STATEMENT

Rather than oppose UB's original dispositive motion (*see* Dkt. 6), Plaintiff filed her FAC. However, the FAC fails to—and indeed cannot—cure the constitutional and other fatal defects of its predecessor and, in some ways, made those defects worse.  Thus, the FAC should be dismissed.

As before, Plaintiff alleges, in a conclusory fashion and without supporting facts, that UB violated the recently amended "automated" calling restrictions of the Florida Telephone Solicitation Act—specifically, Fla. Stat. § 501.059(8)(a) ("FTSA"),[2] Florida's analogue to the federal Telephone Consumer Protection Act (the "TCPA").  This claim still rests on a handful of text messages—some of which specifically addressed Plaintiff by name ("Brittany"), all having different content, and the first purportedly received the same day the new FTSA restrictions took effect.  Plaintiff alleges that these personalized and targeted text messages were sent to her cell phone using an "automated system for the selection or dialing of telephone numbers" without her consent.  Though Plaintiff originally filed her case in state court, UB properly removed it to this Court and she has since amended her pleading in this Court.  Consequently, Plaintiff must now satisfy federal pleading standards and plead sufficient facts supporting a plausible claim for relief.  She has not done so.

Beyond still being devoid of factual support, which alone warrants its dismissal, Plaintiff's FTSA claim in her FAC still suffers from a bigger flaw.  That is, Section 8(a)—containing new ill-defined restrictions specific only to automated "telephonic sales calls" about "consumer goods and services"—is ***unconstitutional***.  Thus, the FAC should be dismissed on at least these grounds:

<u>First</u>, Section 8(a) of the FTSA violates the First Amendment to the U.S. Constitution and Florida Constitution's coextensive speech protections.  Indeed, by singling out and creating a new set of unique calling restrictions for one specific type of speech and speaker to the exclusion of all others, Section 8(a) is a content-based speech restriction.  As such, it is presumptively unconstitutional and subject to a "strict scrutiny" analysis which it cannot survive, as it is not

---

[1] UB believes that there is an applicable mandatory individual arbitration agreement between the parties and intends to file a motion to compel such an arbitration as soon as possible.  Thus, UB files this dispositive motion to comply with its immediate responsive pleading deadline under Rule 12 but doing so should not be viewed as UB waiving the right to timely seek arbitration.

[2] Herein after, "Section 8(a)" unless otherwise specified.

"narrowly tailored" to serve a "compelling" state interest.  In fact, before Section 8(a) took its current form, two similar state calling statutes did not survive a strict scrutiny review and were deemed unconstitutional by other federal courts.[3]  Section 8(a) should suffer the same fate here.  Moreover, even if it was not subject to a rigorous "strict scrutiny" analysis (and it is), Section 8(a) would still be unconstitutional if the Court were to apply the lesser "intermediate scrutiny" standard.  And because Plaintiff's FTSA claim is unconstitutional, it should be dismissed under Rule 12(b)(6).

Second, Section 8(a) also violates the due process clause of the Fourteenth Amendment and Florida's equivalent protections because it is unconstitutionally vague, in that it broadly regulates calls made with "an automated system for the selection or dialing of phone numbers" without defining that critical phrase or the key words within it, like other equivalent calling statutes do. Notably, the bill amending Section 8(a) swiftly passed through the Florida legislature and was signed into law by the Governor the day after it was presented to him and three days before taking effect on July 1, 2021.[4]  Consequently, there is nothing in the short legislative history of the bill clarifying what such an "automated system" might look like; if anything, reviewing the full FTSA legislative history makes matters worse, as the technology terms vary throughout.  As a result, with hardly any notice of or time to come in compliance with the new law, and with no guidance on how to apply or avoid violating it, persons who might make legal "automated" calls under the TCPA now potentially face ruinous damages and exorbitant legal fees to would-be class action plaintiffs and lawyers under new FTSA provisions, which has a chilling effect on speech.  Thus, Section 8(a) is unconstitutionally vague and the FAC should be dismissed under Rule 12(b)(6) on this additional basis.

Third, the FAC should also be dismissed under Rule 12(b)(6) because it still fails to state a plausible FTSA claim or to allege facts supporting such a claim.  In this regard, Plaintiff: (i) merely continues to parrot the statutory definition regarding the supposed "automated system" purportedly used to send the at-issue texts, and the new conclusory allegations she added to her FAC do not save it from dismissal; and (ii) does not plead any facts supporting UB's direct or vicarious liability under the FTSA (*i.e.*, that UB itself physically sent the texts or was in a common law agency relationship with the person who did).  Courts evaluating claims under the TCPA's analogous "automated" call provisions routinely dismiss such bald complaints at the pleadings stage for not meeting federal

---

[3] *See Gresham v. Rutledge*, 198 F. Supp. 3d 965 (E.D. Ark. 2016); *Cahaly v. Larosa*, 796 F.3d 399 (4th Cir. 2015).

[4] *See* 2021 Fla. Sess. Law Serv. Ch. 2021-185 (C.S.S.B. 1120) (West).

pleading standards.  The Court should look to those well-reasoned TCPA authorities for guidance on the sufficiency of Plaintiff's FTSA claim, and dismiss the FAC for these additional reasons.[5]

## BACKGROUND AND RELEVANT ALLEGATION

**A.     The FTSA**

On June 28, 2021, Florida Senate Bill 1120, which amended the FTSA to add various new requirements relating to the use of an "automated system" to make "telephonic sales calls" to consumers, including certain written consent requirements and a private right of action, was presented to the Governor, who signed it on June 29, 2021.  On July 1, 2021, the amendments went into effect.  In relevant part, the amendments provide as follows:

> (8)(a)  A person may not ***make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers*** or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party.

> (10)(a)  A called party who is aggrieved by a violation of this section may bring an action to:
>     1.  Enjoin such violation.
>     2.  Recover actual damages or $500, whichever is greater.

> (b)  If the court finds that the defendant willfully or knowingly violated this section or rules adopted pursuant to this section, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under paragraph (a).

Fla. Stat. § 501.059 (emphasis added).

The phrase "telephonic sales call" is defined as "a telephone call, text message, or voicemail transmission to a ***consumer*** for the purpose of soliciting a sale of any ***consumer*** goods or services, soliciting an extension of credit for ***consumer*** goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of ***consumer*** goods or services or an extension of credit for such purposes."  Fla. Stat. § 501.059(1)(j) (emphasis added).  However, the statute does not define "an automated system for the selection or dialing of telephone numbers."

Since its enactment, the amended Section 8(a) has spawned a new wave of similar conclusory class action complaints filed by consumers, the first of many being filed mere days after taking effect, and some now pending before other courts in this District (and elsewhere) raising the same issues as here.  *See, e.g., Borges v. SmileDirectClub, LLC*, No. 1:21-cv-23011-MGC, S.D. Fla., Dkt. 1-3

---

[5] As discussed below (p. 15, *infra*), while there is virtually no applicable case law on Section 8(a) even prior to its recent amendment, Florida courts often look to federal decisions for guidance when interpreting state statutes that are similar to federal ones.  This Court should do so here.

(complaint);  Dkt. 5 (Fed. R. Civ. P. 5.1 notice of constitutional challenge to Florida State Attorney General); Dkt. 39 (court certification of constitutional challenge).

**B.      Plaintiff's FTSA Claim Against Underlining Beauty**

On August 23, 2021, Plaintiff filed her original complaint against UB.  *See generally* Dkt. 1. When UB moved to dismiss on the same grounds as presented here, Plaintiff filed her FAC on November 11, 2021, alleging the same FTSA claim, adding a handful of new but equally conclusory allegations, and directly contradicting some of her prior allegations in an effort to avoid dismissal.[6]

For example, Plaintiff originally alleged, in a conclusory fashion and without factual support, that beginning July 1, 2021 (*i.e.*, the same day that FTSA afforded a private cause of action) UB "made *or caused to be made* telephonic sales calls" to her in the form of seven text messages, each with different content and several specifically addressed to her by name ("Brittany").  Dkt. 1, ¶¶ 9, 11-13 (emphasis added).  Plaintiff now contradictorily alleges, albeit still with no supporting facts, that UB "*made* telephonic sales calls" to her based on the same personalized texts, FAC ¶¶ 9 & 11-13, but also that UB "*made and/or knowingly <u>allowed</u> telephonic sales calls to be made* to Plaintiff" and the putative class without their "prior express written consent," *id.* ¶ 42 (emphasis added).

Similarly, Plaintiff still concludes in her FAC that, to "transmit the [] telephonic sales calls, [UB] utilized a computer software system that automatically selected and dialed" Plaintiff's telephone number.  *Id.* ¶ 15.  However, despite certain of the texts being personalized and each having different content, and despite each purportedly being received on different days and times over the course of two months, Plaintiff now concludes that the "generic and impersonal nature" of the at-issue text messages she purportedly received, "coupled with their frequency, and the fact that they originated from a short-code, demonstrates that [UB] utilized a computer software system that

---

[6] This Court may properly (and indeed should) consider the allegations in Plaintiff's original complaint when determining the plausibility of the allegations in the FAC here, and it need <u>not</u> accept contradictory allegations as true under Rule 12(b)(6).  *See, e.g., Echeverria v. Bank of Am., N.A*, 2014 WL 11369472, at *1, n.1 (M.D. Fla. Nov. 14, 2014), *aff'd sub nom.* 632 F.App'x 1006 (11th Cir. 2015) (the Court "may take judicial notice of the public record including documents filed and the record in other judicial proceedings" under Rule 12(b)(6)); *Naval Logistics, Inc. v. M/V Petrus*, 2021 WL 3818586, at *3–4 (S.D. Fla. July 26, 2021) ("As a general rule, [a] plaintiff ... may not plead facts in their amended complaint that contradict those in their original complaint. [] And while reconcilable small variations between the complaints are acceptable, ... where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss ... and directly contradicts the facts set forth in his original complaint a court is authorized to accept the facts described in the original complaint as true.") (quoting *Rubinstein v. Keshet Inter Vivos Tr.*, 2017 WL 7796306, at *3 (S.D. Fla. Nov. 1, 2017)) (internal citations and quotation marks omitted).

automatically selected and dialed Plaintiff's and the Class members' telephone numbers." *Id.* ¶ 19. Plaintiff's FAC also now concludes that: (i) UB "used a messaging platform … which permitted Defendant to transmit thousands of text messages automatically and without any human involvement"; and (ii) this "platform" has "the capacity to select and dial numbers automatically from a list of numbers" and to "schedule the time and date for future transmission of text messages" and also has an "auto-reply function that results in the automatic transmission of text messages" if one were to reply to the texts. *Id.* ¶¶ 20-24. Plaintiff does not claim to have replied to any of the texts she supposedly received or that she received any automated responses, however.

The foregoing represents the few "factual" allegations in Plaintiff's entire FAC. What remains are boilerplate allegations shedding no light on the factual basis of her FTSA claim, bare recitations of the legal elements of her purported claim and other legal authority, a vaguely defined proposed class definition, and other class-related allegations. As to the latter, Plaintiff seeks to represent an ill-defined class of "[a]ll persons in Florida who, (1) were sent a text message call regarding Defendant's goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff." *Id.* ¶ 27. As shown below, however, these claims fail on several levels.

## APPLICABLE LEGAL STANDARDS

"[F]ederal pleading standards, including *Twombly/Iqbal*, apply to removed complaints" like Plaintiff's. *Jaggars v. City of Sheffield, Ala.*, 2014 WL 2123210, at \*3, n.4 (N.D. Ala. May 21, 2014) (collecting cases).[7] *Accord Lynch v. Jackson,* 478 F.App'x. 613, 616 (11th Cir. 2012) ("Although the case has been removed to federal court and federal procedural rules apply, Plaintiff must still comply with federal pleading requirements. On a Rule 12(b)(6) motion to dismiss, the plaintiff has an obligation to provide the grounds for his entitlement to relief."). In this regard, Rule 12(b)(6) provides for dismissal where a plaintiff fails to sufficiently plead a claim for relief. A "bare assertion" and "conclusory allegation[s]" will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also id.* at 678 (pleadings must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Instead, Plaintiff must "include ***factual*** allegations for ***each*** essential element of … [her] claim."

---

[7] Where, as here, a state claim is removed under the Class Action Fairness Act, state substantive law applies. *See VIP Auto Glass, Inc. v. GEICO Gen. Ins. Co.*, 2018 WL 3650109, at \*1 (M.D. Fla. Feb. 23, 2018), *report and rec. adopted,* 2018 WL 3650040 (Apr. 16, 2018) (citations omitted).

*GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012) (emphasis added).

Moreover, while the Court must generally accept Plaintiff's well-pled factual allegations as true, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal" under Rule 12(b)(6). *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003); *see also Jaafar Inv. Corp. v. Scottsdale Ins. Co.*, 2019 WL 8014368, at *1 (S.D. Fla. June 7, 2019) ("Defendant is correct that Plaintiff supports his allegations with insufficient ***specific facts*** about the nature and extent of [his] alleged loss.") (emphasis added).

Finally, where (as here) a statute upon which a claim is based is unconstitutional, dismissal under Rule 12(b)(6) is warranted. *See, e.g., Larios v. Perdue*, 306 F. Supp. 2d 1190, 1208 (N.D. Ga. 2003) (dismissing under Rule 12(b)(6)).[8]  However, the usual Rule 12(b)(6) analysis is streamlined in cases where a party asserts facial challenges to the constitutionality of a state statute, which is a purely legal question. *See, e.g., Bell v. City of Winter Park*, 745 F.3d 1318, 1323 (11th Cir. 2014) (affirming dismissal of complaint asserting facial challenge to Florida statute as legally insufficient, without regard to specific facts alleged); *Harris v. Mex. Specialty Foods, Inc.,* 564 F.3d 1301, 1308 (11th Cir. 2009) ("A facial challenge asserts that a law always operates unconstitutionally.") (internal quotations and citation omitted").  In short, dismissal on the pleadings is appropriate where an underlying statute is unconstitutional. *Id.* ("In the context of a facial challenge, a purely legal claim is presumptively ripe for judicial review because it does not require a developed factual record.").

## **ARGUMENT**

I.    **THE FAC SHOULD BE DISMISSED BECAUSE THE FTSA IS AN UNCONSTITUTIONAL CONTENT-BASED RESTRICTION OF FREE SPEECH.**

A.    **The FTSA Employs a Content-Based Restriction of Speech and Therefore is Subject to Strict Scrutiny Review.**

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'" *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) (citing U.S. Const., Amdt. 1).  This means that the government generally "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020) (citing *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)).  A statute is considered "content-based" if "a

---

[8] *But see Creasy v. Charter Commc'ns, Inc.,* 489 F. Supp. 3d 499, 508 (E.D. La. 2020), *judgment entered*, 2020 WL 7646640 (Dec. 23, 2020) (Sept. 28, 2020) (dismissing under Rule 12(b)(1)).

regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Reed*, 576 U.S. at 163.  This definition also includes a statute that "singles out specific subject matter for differential treatment." *Id*. at 169.  Thus, as just one example, "a law banning the use of sound trucks for political speech—and only political speech—would be a content-based regulation, even if it imposed no limits on the political viewpoints that could be expressed." *Id.*

    *Barr* is further instructive on this point.  There, the U.S. Supreme Court held that the government-backed debt exception to the "automatic telephone dialing system" restrictions of the TCPA,[9] which permitted automated calls to collect a government debt without consent, where such calls would otherwise be unlawful under the statute, was an unconstitutional content-based restriction on free speech that was not narrowly tailored to serve a compelling interest.  140 S. Ct. at 2346-47.  The Supreme Court found that a rule that differentiates between calls based on whether the call's content is to collect a government debt "is about as content-based as it gets." *Id.*

    Applying these concepts here, Section 8(a) provides "a person may not make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party."  Fla. Stat. § 501.059(8)(a).  While the FTSA does not define what this "automated system" is, which itself is an unconstitutional defect warranting the FAC's dismissal (*see* Section II., *infra*), a "telephonic sales call" is defined as "a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes."  Fla. Stat. § 501.059(1)(j).  On its face, therefore, whether a call violates Section 8(a) rest squarely on whether it is a call to a ***consumer about consumer*** (not commercial) ***goods or services***.

    For example, a call made to a Florida consumer for the purpose of collecting a debt using an "automated system" without consent—which is no longer allowed under the TCPA's "automatic telephone dialing system" restrictions after *Barr*—or an "automated" political call to a Florida consumer (among other subject matter) would be perfectly legal under the FTSA on its face.  Yet, a call for the purpose of selling a consumer good or service to that same person while using the same

---

[9] *See* 47 U.S.C. § 227(b)(1).

"automated system" without consent is illegal on its face.  Put differently, Section 8(a) regulates a specific type of caller and subject matter—a salesperson making a sales call about consumer products to a consumer—while all other types of calls can be made with an "automated system" with impunity.  More simply, it is perfectly legal on the face of the FTSA to call a Florida consumer using an "automated system" without consent, so long as you do not try to sell them something or, if you do, sell them only non-consumer products.  As in *Barr*, "that is about as content-based as it gets." 140 S. Ct. at 2346-47 ("Because the law favors speech made for collecting government debt over political and other speech, the law is a content-based restriction on speech.").  Thus, in light of the foregoing, this Court should rule that Section 8(a) is a content-based restriction on free speech.[10]

Moreover, it is well-settled that "[c]ontent-based laws—those that target speech based on its communicative content [like Section 8(a) does]—are presumptively unconstitutional" and, as such, are subject to "strict scrutiny" review and "may be justified [under the First Amendment] only if the government proves that they are narrowly tailored to serve compelling state interests."  *Reed*, 576 U.S. at 163; *see also Barr*, 140 S. Ct. at 2347.[11]  In this regard, well before the recent amendments to Section 8(a) of the FTSA, two similar state calling statutes were struck down by other federal courts applying this standard, which are instructive here.  For example, in 2015, the Fourth Circuit invalidated a South Carolina statute prohibiting  "unsolicited consumer telephone calls"—the definition of which was closely analogous to the FTSA's definition of "telephonic sales calls" —and political calls.  *Cahaly*, 796 F.3d at 402.  Applying strict scrutiny in that case, the Fourth Circuit

---

[10] That Section 8(a) would seemingly <u>not</u> apply to "telephonic sales calls" <u>not</u> made using an "automated system" (*i.e.*, manually dialed sales calls are allowed) or "telephonic sales calls" made using such a system but with "prior express written consent"—meaning that <u>not all</u> "sales calls" are restricted—is of no moment.  Indeed, the analogous provision of the TCPA at issue in *Barr* permitted all sorts of calls if manually dialed or made with consent too; and, yet, the Supreme Court found the government debt collector exemption to be an unconstitutional content-based restriction anyway, as it regulated a particular type of speech to the exclusion of other forms.  In other words, applying *Barr* here, it is not how the calls are made or if there was consent that matters as to whether Section 8(a) constitutes a ***content-based*** restriction on speech.  Rather, what matters is that "telephonic sales calls" (*i.e.,* calls to consumers ***about*** selling consumer goods or services to the consumer) are being singled out for differential treatment and require consent if made using an "automated system," while calls about any other subject (*e.g.*, non-consumer goods) have no such restrictions.  *See also Norwegian Cruise Line Holdings, Ltd. v. Rivkees*, 2021 WL 3471585, at *10 (S.D. Fla. Aug. 8, 2021) ("Defendant wrongly suggests that a law only regulates speech if it 'forbids' or 'prohibits' a form of speech…. It is well-established that a law may constitute a speech-based restriction by burdening or limiting speech on a particular topic, even if it does not outright ban a form of speech.").

[11] The First Amendment to the U.S. Constitution is also coextensive with the Florida Constitution's guarantee of free speech.  *See, e.g., Cafe Erotica v. Fla. Dep't of Transp.,* 830 So. 2d 181, 182–83 (Fla. Dist. Ct. App. 2002).

struck down that part of the analogue statute on the basis that it was not narrowly tailored and "suffers from under-inclusiveness because it restricts two types of robocalls—political and consumer—but permits 'unlimited proliferation' of all other types." *Id.* at 406.

Similarly, in. 2016, the district court struck down a similar Arkansas statute, which prohibited the use of an autodialer to place calls offering goods or services or in connection with a political campaign. *Gresham,* 198 F. Supp. 3d at 972-973. Also applying strict scrutiny there, the district court held that the statute was underinclusive because "no limit [wa]s placed" on other types of calls "that also may intrude on residential privacy." *Id*. at 972. The court in *Gresham* did this despite the Attorney General's submission of evidence that she had received no consumer complaints regarding charity robocalls and few consumer complaints regarding debt collection robocalls. *Id.* at 971-72. The court reasoned that, "[i]f the interests of privacy and safety warrant restriction of automated calls made for a commercial purpose or in connection with a political campaign, they also warrant restriction of other types of automated calls." *Id.* at 972. Additionally, it is notable that, in *Barr*, the amendment to the TCPA "automated telephone dialing system" ("ATDS" or, more commonly, an "autodialer") provision at issue, which carved out an exemption for automated calls made to collect a government debt, failed strict scrutiny because the government "ha[d] not sufficiently justified the differentiation between government-debt collection speech and other important categories of robocall speech, such as political speech, charitable fundraising, issue advocacy, commercial advertising, and the like." 140 S. Ct. at 2347. Such is plainly true here with respect to the FTSA.

As applied in the present case, these directly on-point authorities suggest that Section 8(a), as a content-based free speech restriction, is appropriately examined under the rigorous "strict scrutiny" standard. This Court should rule similarly and apply strict scrutiny here. As shown below, however, Section 8(a) does not survive a strict scrutiny review for several reasons.

**B.     Section 8(a)'s Content Based Speech Restriction Fails "Strict Scrutiny" Review Because the State Has Not Articulated a "Compelling State Interest" or a "Narrowly Tailored" Restriction to Achieve that Interest.**

Surviving a strict scrutiny analysis "requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 131 S.Ct. 2806, 2817 (2011) (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010)). As applied to this case, it is the State of Florida's burden to demonstrate that Section 8(a)'s differentiation between a telephonic sales call and other types of call content furthers a compelling governmental interest and is narrowly tailored

to that end. *Id*.; *Reed*, 576 U.S. at 172.  The State cannot meet this heavy burden here.

Omitted from the FTSA and legislative history is either purpose or justification for limiting the application of Section 8(a) to just "telephonic sales calls" to consumers about "consumer goods and services" made using an "automated system" as opposed to all other automated calls (e.g., political calls).  Rather, in the legislative history, the Florida legislature discussed that consumers have complained about unwanted telephone calls generally, including calls which use an autodialer and play a recorded message or spoofed calls (which transmit false caller ID information to disguise caller identity) regardless of content and unwanted telemarketing calls regardless of how they are made (*i.e.*, manual calls).  However, it did not specifically articulate the purpose behind regulating only "telephonic sales calls" and not, for example, calls made for the purpose of collecting a debt or political calls using an "automated system for the selection or dialing of telephone numbers."[12]

Even assuming *arguendo* that the Florida legislature identified a specific purpose or motivation behind limiting the FTSA as it did—such as concerns about protecting "consumer" privacy or other interests in relation to "consumer" goods or services sales, preventing "automated" calls to "consumers" generally, or even just all "unwanted" calls even if manual—Section 8(a) is not narrowly tailored to serve any such interest anyway.  "A statute is narrowly tailored if it targets and eliminates **no more than the *exact* source of the 'evil' it seeks to remedy.**"  *Frisby v. Shultz*, 487 U.S. 474, 485 (1988) (emphasis added) (citing *City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 808-10 (1984)).  But the text of the FTSA is not focused on an "exact source of evil" but rather is both overinclusive and underinclusive and, as such, still fails strict scrutiny review.

In this regard, while an ***over***inclusive content-based restriction is not "narrow" by any definition, an ***under***inclusive restriction is not "narrow" in this context, either.  In fact, the Supreme Court has held that legislation that is "underinclusive" or leaves injuries to the government's purported interest unprohibited is not narrowly tailored.  *Reed*, 576 U.S. at 172.  Along those lines, Section 8(a) is underinclusive, and therefore not narrowly tailored for strict scrutiny, because it still permits many types of unwanted calls.  For example, Section 8(a) does nothing to limit all the other types of unwanted automated calls (like political calls made during election seasons) and still permits unwanted "telephonic sales calls" that are not made with an "automated system for the selection or dialing of telephone numbers."  Further, unlike the analogous provision of the TCPA, which

---

[12] *See* Florida Senate Bill Analysis and Fiscal Impact Statement for CS/SB 1120 ("hereinafter "FIS") at 2, available at https://www.flsenate.gov/Session/Bill/2021/1120/Analyses/2021s01120.rc.PDF.

prohibits "*__any__* call" made using an ATDS other than emergency calls or with the prior express consent of the called party (47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added)), the FTSA prohibits only automated "telephonic sales calls," which is defined and limited to include only calls to consumers about consumer goods or services.  *See* Fla. Stat. § 501.059(1)(j).  Thus, calls to consumers or businesses about non-consumer goods and services, or to businesses about consumer goods and services, utilizing the same system are permitted.  In short, rather than prohibiting all autodialed calls on all topics (except for emergency calls, which are indisputably a "compelling state interest") like the TCPA does, the FTSA "singles out [telephonic sales calls regarding consumer goods or services ] for differential treatment." *Reed*, 576 U.S. at 169.  *See also Cahaly*, and *Gresham*, *supra* (applying strict scrutiny and striking down similar calling statute for being underinclusive).

Finally, in addition to leaving many types of unwanted automated calls unrestricted (which makes it underinclusive), if Section 8(a) was actually motivated by consumer protection or privacy concerns against unwanted calls generally or even against specific types of unwanted calls, it is simultaneously overinclusive because it unnecessarily restricts calls consumers may have actually wanted or expected.  For example, a consumer could contact a business about a purchase of a consumer product and ask to be called back but not provide their "prior express written consent" within the meaning of the FTSA's definition of that term.  *See* Fla. Stat. § 501.059(1)(g).  Alternatively, the consumer could provide that business with their "prior express written consent" within the meaning of the *__TCPA__*—which seemingly has different requirements than its Floridian counterpart.  *See* 47 C.F.R.§ 64.1200(f)(9).  The end result is that the consumer does not receive a clearly wanted call just because his consent was not in the right format, or the business takes the risk of possibly violating the FTSA by using an "automated system" to call the consumer (which, as discussed below, is impossibly vague), which has a chilling impact on speech.  Either way, these examples demonstrate that Section 8(a) is overinclusive and not "narrowly tailored."  Because Section 8(a) is a presumptively unconstitutional content-based restriction that does not withstand strict scrutiny, this Court should dismiss Plaintiff's FAC in its entirety under Rule 12(b)(6).

C.     **Section 8(a) Also Would Not Survive "Intermediate Scrutiny" If Applied Because the State Has Not Articulated a "Substantial State Interest" or the Restrictions are "Not More Extensive Than Is Necessary" to Achieve That Interest.**

In the event that Plaintiff argues that only "intermediate scrutiny" should apply, at most, to the extent Section 8(a) involves restrictions on "commercial" speech, that would be a futile

argument, because Section 8(a) does not survive intermediate scrutiny review in any event. Under the intermediate scrutiny standard, speech that is "neither misleading nor related to unlawful activity" (and the commonplace text messages at issue this case are certainly not misleading or relate to unlawful activity) may be restricted only if there is (i) a "substantial" state interest, (ii) "the regulation directly advances the governmental interest asserted" and (iii) the regulation "is not more extensive than is necessary to serve that interest." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980). The State also bears the burden of meeting this standard. *See FF Cosms. FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1299 (11th Cir. 2017).

As discussed above, there is nothing in the FTSA's legislative history or the text of the statute itself suggesting there is any particular state interest that the recent amendments were designed to address; and, even if there were some generalized interest in protecting consumers from unwanted automated calls or consumer privacy, the Section 8(a) is both under- and overinclusive in advancing such interests. This is because there are a variety of "unwanted" calls not covered by it (*e.g.,* debt collection calls, scam calls, non-sales calls, political calls, and non-consumer sales case that do not fit the definition of a "telephonic sales call" that can be made in automated fashion, without consent and without recourse), and a variety of "wanted calls" that are covered when they should not be (*e.g.,* where there is consent but not "prior express written consent" within the meaning of the FTSA).

## II.     THE FAC SHOULD ALSO BE DISMISSED BECAUSE THE FTSA IS UNCONSTITUTIONALLY VAGUE.

The FAC should also be dismissed because Section 8(a) is impermissibly vague in violation of the Fourteenth Amendment of the U.S. Constitution and Florida Constitution's equivalent protections. In this regard, the Fifth Amendment to the U.S. Constitution (applicable to the states as incorporated by the Fourteenth Amendment) provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law." *Johnson v. United States*, 576 U.S. 591, 595 (2015).[13] This guarantee is violated when a law is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Id.* (citing *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983)). "When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *FCC*

---

[13] The due process guarantees of the Fourteenth Amendment to the U.S. Constitution are coextensive with those of the Florida Constitution, as well. *See, e.g., Bonavista Condo. Ass'n, Inc. v. Bystrom,* 520 So. 2d 84, 86 (Fla. Dist. Ct. App. 1988).

*v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012); *see also Smith v. Goguen*, 415 U.S. 566, 573 (1974) (holding the vagueness doctrine "demands a greater degree of specificity" when the statute is capable of an interpretation that covers speech protected by the First Amendment).

Along those lines, the FTSA prohibits telephonic sales calls made involving "an automated system for the selection or dialing of telephone numbers or the playing of a recorded message[.]" Fla. Stat. § 501.059(8)(a). The analogous federal provision, however, prohibits calls made with an "automatic telephone dialing system." 47 U.S.C. § 227(b)(1)(a)(iii). Unlike the TCPA, which defines "automatic telephone dialing system" (*see* 47 U.S.C. § 227(a)(1)), Section 8(a) does not define "automated system for the selection or dialing of telephone numbers or the playing of a recorded message" or any of the key words in it, even partially. A definition, or even a discussion regarding the current meaning of the term in the context of the FTSA, is likewise absent from the legislative history.[14] And prior to the recent amendments, the FTSA used different phrases throughout, even in the same Sections, to wit:

> (8)(a) No person shall make or knowingly allow a telephonic sales call to be made if such call involves an ***automated system for the selection or dialing of telephone numbers or the playing of a recorded message*** when a connection is completed to a number called.

> (b) Nothing herein prohibits the use of an ***automated telephone dialing system*** with live messages if the calls are made or messages given solely in response to calls initiated by the persons to whom the ***automatic calls*** or live messages are directed.

Fla. Stat. § 501.059(8)(a)-(b) (eff. July 1, 2018 to June 30, 2021) (emphases added). In short, the varying terminology found in the prior iteration sheds no light on the intended definition in the current version. Similarly, the FTSA's legislative history uses the phrases "automated machine," "automated dialer," "automatic telephone dialing system," and "autodialer" seemingly interchangeably and without consideration to possible different meanings, and sometimes conflates them into a singular "technology." FIS at 1-2 ("State and federal action to combat these issues are limited because there are legitimate and legal uses of this technology."). But it is unclear whether these phrases all refer to the same "technology," and even if they do, what the exact parameters of that "technology" are. As such, it is completely unclear what equipment or technology constitutes

---

[14] At best, the FTSA's legislative history provides the definition of an ATDS as an autodialer under the TCPA. *See* FIS at 2. Thus, it is unclear as to whether "an automated system for the selection or dialing of telephone numbers" is meant to be coextensive with or different than the TCPA's definition of an ATDS. Plaintiff's FAC does not hazard a guess on that front.

- 13 -

an "automated system" subject to the requirements of Section 8(a)—in past versions or its present form.  Therefore, it is impossible for anyone to know whether they comply with it, are violating it, could violate it, or can come into compliance, let alone how to state a claim for relief under it.[15]

Moreover, the undefined FTSA "automated system" is not necessarily coextensive with the TCPA's definition of an "automatic telephone dialing system."  Federal courts applying the Supreme Court's recent interpretation under the TCPA (*i.e., Facebook v. Duguid*, 141 S. Ct. 1163 (2021)) have held that the touchstone of an "automatic telephone dialing system" is not whether it dials numbers or even "selects" numbers automatically from a pre-produced list, but rather whether the system ***generates*** telephone numbers to be dialed, either randomly or sequentially—*i.e.,* that a random or sequential number generator was ***actually used*** to place the calls or send the texts.  *See, e.g., Samataro, et al. v. Keller Williams Realty, Inc., et al.,* 2021 WL 4927422, at *4 (W.D. Tex. Sept. 27, 2021); *Anyaebunam v. ARS Account Resolution,* LLC, et al., 2021 WL 4775146, at *3 (D.N.J. Oct. 13, 2021); *Gross v. GG Homes, Inc.,* 2021 WL 4804464, at *3 (S.D. Cal. Oct. 14, 2021); *Wilson v. Rater8, LLC, et al.,* 2021 WL 4865930, at *2–3 (S.D. Cal. Oct. 18, 2021).[16]  Further,  as noted below (*see* pp. 17-18, *infra*), many courts have found that whether the calls or texts were "targeted" or "random"—like the personalized texts Plaintiff allegedly received here—can be outcome determinative as to whether a dialer qualifies as an ATDS under the TCPA's definition.

By contrast, the FTSA appears on its face to regulate the "automated" (whatever that means) dialing or "selection" (whatever that means) of numbers, regardless of whether the numbers were "generated" at all, let alone generated randomly or sequentially.  While one could perhaps speculate that the "automated" nature of the "systems" under both schemes implies there must be some measure of randomness to qualify, Florida courts have not yet opined on this, and neither has the Florida legislature.  Consequently, as it stands, there is no basis or guidelines by which businesses

---

[15] It is telling that other autodialing statutes provide definitions for covered technology like the TCPA.  *See, e.g.,* N.Y. Gen. Bus. Law § 399-p(a); 815 ILCS 305/5(a); Wash. Rev. Code § 80.36.400(1)(a).  That the FTSA does not have such a definition further shows its vagueness.

[16] While some courts have reached different conclusions, this represents a growing majority view of the proper definition of an ATDS under the TCPA.  *See, e.g., Guglielmo v. CVS Pharmacy, Inc.,* 2021 WL 3291532, at *2 (D. Conn. Aug. 2, 2021); *Barry v. Ally Fin., Inc.,* 2021 WL 2936636, at *4–7 (E.D. Mich. July 13, 2021); *Watts v. Emergency Twenty Four, Inc.,* 2021 WL 2529613, at *3 (N.D. Ill. June 21, 2021); *Camunas v. Nat'l Republican Senatorial Comm.,* 2021 WL 2144671, at *6 (E.D. Pa. May 26, 2021); *Tehrani v. Joie De Vivre Hospitality, LLC,* 2021 WL 3886043, at *6–7 (N.D. Cal. Aug. 31, 2021); *Borden v. eFinancial, LLC,* 2021 WL 3602479, at *5–6 (W.D. Wash. Aug. 13, 2021); *Stewart v. Network Cap. Funding Corp.,* 2021 WL 3088011, at *2 (C.D. Cal. July 16, 2021); *Hufnus v. DoNotPay, Inc.,* 2021 WL 2585488, at *1-2 (N.D. Cal. June 24, 2021).

can determine exactly what technology falls within the ambit of the FTSA or whether it falls under both the FTSA and TCPA (or neither). Instead, businesses can only guess at their peril as to what dialing equipment is legal under the FTSA, and the statute is rife for inconsistent judicial interpretations, arbitrary enforcement, and threatens to chill protected speech. Thus, the Court should declare Section 8(a) unconstitutionally vague and dismiss the FAC on this basis as well.

### III.   THE FAC SHOULD ALSO BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Even if it could survive UB's constitutional challenge (and clearly it cannot), Plaintiff's threadbare FTSA claim nevertheless fails on its merits for several reasons.

### A.   The Court Should Apply Instructive TCPA Authorities In This Case.

Given the recent amendments and that it previously did not afford consumers a private cause of action,[17] there is very little applicable case law on the FTSA. However, "Florida courts often look to federal decisions as a guide to interpreting state statutes that are similar to federal ones." *Martinolich v. Golden Leaf Mgmt., Inc.,* 786 So. 2d 613, 615 (Fla. Dist. Ct. App. 2001) (citing, *inter alia, United Teachers of Dade v. Dade County School Bd.,* 500 So.2d 508, 512 (Fla.1986)). Further, it is "generally presume[d] that [state] courts would adopt the majority view on a legal issue in the absence of indications to the contrary." *Bobo v. Tennessee Valley Auth.,* 855 F.3d 1294, 1304 (11th Cir. 2017) (citing *Wammock v. Celotex Corp.,* 835 F.2d 818, 820 (11th Cir. 1988)). Thus, this Court may appropriately, and indeed should, apply instructive TCPA authorities in this case.

### B.   Plaintiff's Conclusory "Automated System" Allegations Are Insufficient.

Plaintiff's FTSA claim does not withstand scrutiny under federal pleading standards. For starters, Plaintiff's sparse allegations regarding UB's supposed use of an "automated system"—like the rest of her pleading—are conclusory and unsupported by specific facts. Courts in the Eleventh Circuit (including in this District) have widely recognized that baldly alleging use of an "automated telephone dialing system" ("ATDS," "autodialer," or similar "automated" call terminology) and merely parroting the law is not enough to state a plausible TCPA claim or to avoid dismissal under Rule 12(b)(6). *See, e.g., Turizo v. Jiffy Lube Int'l, Inc.*, 2019 WL 4737696, at *3 (S.D. Fla. Sept. 27, 2019) (allegations merely "echoing statutory language defining an ATDS" are insufficient to

---

[17] *See Abbott v. Advantage Travel, LC*, 2014 WL 12618812, at *3 (M.D. Fla. May 12, 2014) (noting that the "Florida Legislature did not intend to permit entities other than the Florida Department of Agriculture and Consumer Services and the Florida Department of Legal Affairs to bring suit pursuant to Fla. Stat. § 501.059" prior to the recent amendments).

allege defendant used an ATDS to send at-issue texts); *Mesa v. Am. Express Educ. Assurance Co.*, 2017 WL 2212147, at *5 (S.D. Fla. May 18, 2017) (dismissing where plaintiff pleaded insufficient facts supporting ATDS use); *Padilla v. Whetstone Partners, LLC,* 2014 WL 3418490, at *2 (S.D. Fla. 2014) (dismissing where plaintiff, *inter alia,* "fail[ed] to explain the circumstances that suggest Defendant used an automatic calling device"); *Duran v. Wells Fargo Bank, N.A.,* 878 F. Supp. 2d 1312, 1316 (S.D. Fla. 2012) (dismissing TCPA claim where the complaint was "devoid of any factual allegations" supporting ATDS use).  Such is true in the present case.

Here, Plaintiff's "automated" calling allegations in support of her FTSA claim in her FAC, like those in her original complaint, merely parrot the statutory language (often nearly verbatim) without requisite specific supporting facts.  *See, e.g.,* FAC ¶¶ 15, 19, 20-25, 43.  While Plaintiff now concludes that the "generic and impersonal nature" of text messages she purportedly received "coupled with their frequency" somehow "demonstrates that [UB] utilized a computer software system that automatically selected and dialed Plaintiff's" number (*id*. ¶ 19), those new allegations are plainly contradicted by the language of the at issue texts included in the FAC.  In fact, not only did some of the seven at-issue texts refer ***specifically to Plaintiff by name*** but also each of them had different content and could hardly be classified as "generic" or "frequent."  *Id.* ¶ 11.

Rather, per the screenshots in the FAC, the personalized texts were purportedly received over the span of two months at irregular intervals—specifically, on July 1, July 3, July 16, July 17, August 13, August 15 and August 17, 2021 (the latter presumably being the "Tuesday" immediately before Plaintiff filed her original complaint)—and at different times.  *Id.* ¶ 11.  Further, while Plaintiff now speculates that the "platform" used "has the capacity to select and dial numbers automatically from a list of numbers" and to "schedule the time and date for future transmission of text messages" and has an "auto-reply function that results in the automatic transmission of text messages" (*id.* ¶¶ 20-24), these allegations lack any factual support and do not support an inference they were auto-dialed, standing alone.  *See, e.g., ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 702 (D.C. Cir. 2018) ("Anytime phone numbers are dialed from a set list, the database of numbers must be called in some order—either in a random or some other sequence."); *McKenna v. WhisperText*, 2015 WL 428728, at *4 (N.D. Cal. Jan. 30, 2015) (dismissing where plaintiff did not allege that he himself responded to the at-issue text and then received an "auto-reply" message).  Indeed, Plaintiff does not allege that she replied to any of the texts and received an automated response, nothing in her FAC suggests that the at-issue texts were "scheduled" for

particular times, and her new allegations regarding the supposed "capacity" of the "platform" mostly just regurgitate the TCPA definition of an ATDS. In any event, courts applying *Duguid* have widely found that selecting numbers from a preproduced list—or having "capacity" to do so as Plaintiff alleges—does not qualify as an autodialer under the TCPA. *See, e.g., Samataro*, 2021 WL 4927422, at *4 (dismissing ATDS claim "based on calls made to ***specific individuals*** in connection with their property listings, whose numbers were compiled into a preproduced list of phone numbers, as opposed to generated randomly by an autodialer") (emphasis added). This Court should too, here.

Moreover, the touchstone of an "automated" call under the federal statutory scheme is the "'***random nature*** of the automation device'" used to make the call or send the text messages at issue. *Perrong v. MLA Int'l, Inc.*, 2021 WL 3036462, at *2 (M.D. Fla. July 2, 2021) (quoting *Camunas*, 2021 WL 2144671 at *5) (denying motion for default judgment where "random nature" of device not alleged) (emphasis added). In fact, federal courts have historically and consistently dismissed TCPA "automated" call claims at the pleadings stage where, as here, the at-issue calls or texts were ***directly targeted*** at a specific person, as opposed sent at random. *See, e.g.*, *Turizo*, 2019 WL 4737696, at *3 ("In addition, the text of the message raises an inference that it was sent as a result of some provision of services to [plaintiff], as opposed to a marketing message sent *en masse*, as alleged. Therefore, [plaintiff] fail[ed] to sufficiently allege that [d]efendant used an ATDS to send the text messages at issue."); *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1306–12 (11th Cir. 2020) (affirming summary judgment where calls targeted at certain persons).[18] These directly on-point authorities are instructive and further support dismissal of Plaintiff's FTSA claim.

As applied to this case, the FTSA prohibits unauthorized "telephonic sales calls" made with "an automated system for the selection or dialing of telephone numbers." Fla. Stat. § 501.059(8)(a). While the term "automated system" is not defined in the FTSA—which again makes the statute unconstitutionally vague—the numerous decisions applying the FTSA's federal counterpart (just a sampling of which is cited above) show that the targeted nature of a call or text messages does not support—and indeed precludes—any plausible inference that the calls/texts were sent by "automated" means. *See also Ewing v. GoNow Travel Club, LLC,* 2019 WL 3253058, at *3 (S.D.

---

[18] *See also Snow v. General Electric Co.,* 2019 WL 2500407, at *4 (E.D.N.C. 2019); *Suttles v. Facebook, Inc.,* 461 F. Supp. 3d 479, 486–87 (W.D. Tex. 2020); *Joshua Matthews v. Mid City Cannabis Club, Inc.,* 2020 WL 8474705, at *3–4 (C.D. Cal. Dec. 29, 2020); *Thomas-Lawson v. Koons Ford of Baltimore, Inc.,* 2020 WL 1675990, at *4 (D. Md. Apr. 6, 2020); *Pierucci v. Homes.com, Inc.,* 2020 WL 7647636, at *3–4 (E.D. Va. Dec. 23, 2020).

Cal. July 19, 2019) ("'[W]here factual allegations made in a plaintiff's complaint 'are unsupported by any specific facts and appear less likely than the alternate inference, namely that plaintiff received a customer specific text ... through human agency, rather than an ATDS' the [federal] pleading standard for this element is not met.'") (quoting *Maier v. J.C. Penney Corp., Inc.,* 2013 WL 3006415, at *4 (S.D. Cal. June 13, 2013)).  The result should be the same here.

In this case, Plaintiff's conclusory "automated system" allegations are not only insufficient to meet federal pleading standards to the extent they merely repeat the statutory elements without factual support, but they are also belied by the fact that some of the texts she allegedly received were plainly directly targeted at and addressed Plaintiff by name.  *See* FAC ¶ 11 (screenshots of alleged texts, each having different content and some with her name: "Brittany").  Thus, if the FTSA "automated system" is found to be coextensive with its TCPA's counterpart (though again, that is a reasonable interpretation but not necessarily the case, given the utter lack of guidance as to the FTSA definition), it should follow the well-reasoned guidance of myriad courts that have dismissed similar "automated" call claims under the TCPA, and dismiss Plaintiff's FTSA claim on this basis.

### C.      Plaintiff Fails to Plead Facts Support Direct or Vicarious Liability.

Plaintiff's FTSA claim should also be dismissed for the simple reason that she pleads no specific, non-conclusory facts in her FAC indicating ***who actually sent*** the at-issue texts in this case. *See, e.g., Hirsch v. Lyndon S. Ins. Co.,* 2019 WL 5110622, at *6 (M.D. Fla. June 7, 2019), *report and rec. adopted sub nom.,* 2019 WL 8370863 (Aug. 6, 2019), *aff'd,* 805 F.App'x 987 (11th Cir. 2020) (dismissing where plaintiff was "attempting to impose liability on Defendants for countless calls made throughout the United States … without alleging who made the calls").

In this regard, the TCPA contemplates that defendants may be held either directly or vicariously liable for calls that violate the statute's "automated" call restrictions.  *See, e.g., Pascal v. Agentra, LLC*, 2019 WL 5212961 at *2 (N.D. Cal. Oct. 16, 2019) (to be liable under the TCPA, "the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call") (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc.,* 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)).  See also *Rogers v. Postmates* Inc., 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (ruling similarly).[19]  As to the former theory, it is well settled that direct liability under

---

[19] The FTSA could be viewed as similar to the TCPA on this front, as well.  *See* Fla. Stat. § 501.059(8)(a)  ("A person may not ***make <u>or knowingly</u> <u>allow</u> a telephonic sales call <u>to be made</u>*** [*i.e.*, by someone else] if such call involves an automated system….") (emphasis added).

the TCPA applies <u>only</u> to persons or entities that "initiate" telemarketing calls; and that to "initiate" in this context means to literally "***physically place***" a phone call or send a text message. *Sheski v. Shopify (USA) Inc.,* 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)) (emphasis added). But, "[m]erely alleging that [a defendant] 'made' or 'initiated' [a] call"—which is <u>all</u> Plaintiff that continues to do here—"is not sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019).

In the present case, Plaintiff does not plausibly allege that UB <u>itself</u>, as opposed to a third party, physically sent the at-issue texts. For example, while Plaintiff concluded in her original complaint that UB "made or ***caused to be made*** telephonic sales calls" to her and the putative class members (Dkt. 1, ¶ 9 (emphasis added)), she now baldly concludes in her FAC that UB "made telephonic sales calls" to her and the putative class members (¶ 9). Yet, she also inconsistently alleges elsewhere in her FAC that UB "made <u>and/or</u> ***knowingly allowed telephonic sales calls to be made*** to Plaintiff" and the putative class members (*i.e.*, that UB allowed third parties to text her), FAC ¶ 42 (emphasis added); and she otherwise pleads no facts supporting an inference that UB itself, rather than some unidentified third party, physically sent the texts.[20] In short, such obviously "[c]ontradictory allegations" not only improperly regurgitate the statutory language without factual support but are also "inherently implausible, and [thus] fail to comply with Rule 8, *Twombly*, and *Iqbal*" and cannot survive dismissal under Rule 12(b)(6). *Hernandez v. Select Portfolio, Inc.*, 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015). *See also Hirsch,* 2019 WL 5110622, at *4-6 (dismissing where plaintiff "allege[d] in only conclusory terms …that the subject telemarketing calls…were made either by 'Defendants,' 'by or on behalf of Defendants,' or by 'Defendants, either directly or through their agents.' Thus, it remains unclear who made the subject calls and what theory of liability Plaintiff intends to pursue…"). And again, if the FTSA is deemed coextensive with the

---

[20] Moreover, courts have also recognized that even an alleged call or text purportedly "from" the defendant—***even if the defendant is identified by name***—does not, standing alone, allow for a plausible inference that the defendant itself, not a third party, ***physically*** made or initiated it for direct TCPA liability. *See, e.g., Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014) ("[A] seller generally does not 'initiate' calls [within the meaning of the TCPA for direct liability purposes] placed by [alleged] third-party telemarketers."); *Meeks*, 2018 WL 1524067, at *1-5 (finding no direct TCPA liability even though texts identified defendant and included link to defendant's website); *Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *7-10 (E.D. Va. Nov. 12, 2020) (conclusory allegations the caller stated he/she was "associated with" defendant and identified the defendant by name was insufficient to plead direct <u>or</u> vicarious TCPA liability). In short, that the alleged texts say "Nailboo" or had a link to its website is of no moment to direct TCPA liability.

TCPA, such allegations are not sufficient to state a plausible direct FTSA liability claim, either.

Finally, given the dearth of factual allegations in her FAC, it is unclear whether Plaintiff was attempting to allege vicarious liability under the FTSA. To the extent she was, she failed. Federal courts have consistently dismissed TCPA claims premised on vicarious liability at the pleading stage due to failure to allege facts establishing a common agency relationship with (the touchstone of which is "control" over) an agent. *See, e.g.*, *Abramson v. 1 Glob. Capital, LLC*, 2015 WL 12564318, at *3 (S.D. Fla. Sept. 23, 2015) (dismissing where "allegations of vicarious liability [we]re conclusory in nature"); *Hirsch*, 2019 WL 5110622, at *6 (noting that the FCC "has explicitly rejected a theory of liability under the TCPA against the seller of a product for telephone calls marketing that product absent an agency or similar relationship between the seller and the caller").[21] In this case, other than a vague and conclusory allegation that UB "allowed" the texts to be sent, the FAC lacks any facts demonstrating agency. Thus, if Plaintiff was trying to plead vicarious liability, and assuming the FTSA and TCPA are coextensive, she did not do so and her FAC should be dismissed.

## IV.    DISMISSAL SHOULD BE WITH PREJUDICE

Dismissal with prejudice is appropriate, as here, where amendment is futile because "a more carefully drafted complaint could not state a claim." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1137 (11th Cir. 2019). Because Plaintiff brings her claims pursuant to unconstitutional sections of the FTSA, amendment would be futile as a more carefully drafted complaint cannot save her claim. As such, the FAC should be dismissed in its entirety with prejudice.

## CONCLUSION

The FTSA is unconstitutional, in violation of the First and Fourteenth Amendments of the United States Constitution and the Florida Constitution. Beyond that, the FAC comes nowhere close to meeting federal pleadings standards. Therefore, and given that the unconstitutionality of the FTSA is not a defect curable by amendment, Plaintiff's FAC must be dismissed with prejudice.

---

[21] *See also Santiago v. Wm. G. Roe & Sons, Inc.,* 2009 WL 10671210 at *5 n.20 (M.D. Fla. July 2, 2009) (indicating that Florida and federal common law agency principals are in accord).

Dated:  November 24, 2021                    Respectfully Submitted,

                                             **MARK MIGDAL & HAYDEN**
                                             80 S.W. 8th Street, Suite 1999
                                             Miami, Florida 33130
                                             Telephone: (305) 374-0440

                                             By: *s/ Yaniv Adar*
                                                Josh A. Migdal, Esq.
                                                Florida Bar No. 19136
                                                josh@markmigdal.com
                                                Yaniv Adar, Esq.
                                                Florida Bar No. 63804
                                                yaniv@markmigdal.com
                                                eservice@markmigdal.com

                                             *Attorneys for Defendant Underlining Beauty,*
                                             *LLC dba Nailboo*

## REQUEST FOR HEARING

Pursuant to S.D. Fla. L. R. 7.1(b), Defendant respectfully requests oral argument to address the instant Motion.  The Motion involves novel issues of first impression as to the application of the First and Fourteenth Amendments of the U.S. Constitution (and Florida corollaries) to recently-enacted provisions to a Florida statute, particularly in light of recent Supreme Court precedent, and the application and interpretation of said statute.  Oral argument will be beneficial to the resolution of these issues.  UB anticipates that this hearing will last approximately 1 hour.

## CERTIFICATE OF SERVICE

I hereby certify that, on  November 24, 2021, the foregoing was filed electronically.  Notice of this filing will be sent to all parties, via their counsel of record, by operation of the Court's electronic filing and docketing system.

/s/ Yaniv Adar
Yaniv Adar